UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 19-999 JGB (SHKx)** | Date | August 5, 2019 |
| Title | *Evist Herrera v. Pier 1 Imports U.S., Inc., et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion to Remand (Dkt. No. 11); and (2) REMANDING the Case to the San Bernardino Superior Court (IN CHAMBERS)

Before the Court is Plaintiff Evist Herrera's ("Plaintiff") motion to remand. ("Motion," Dkt. No. 11.) The Court took the Motion under submission on August 1, 2019. After considering the papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion and REMANDS the case to state court.

## I. BACKGROUND

**A. Procedural History**

On March 7, 2019, Plaintiff filed a complaint against Defendants Pier 1 Imports U.S., Inc. ("Pier 1"), Daisy Zuniga (together, "Defendants"), and Does 1–100 in the San Bernardino Superior Court. ("Complaint," Dkt. No. 1-1.) The Complaint alleged nine causes of action: 1) disability discrimination in violation of Cal. Govt. Code § 12940(a) based on disparate treatment; 2) disability discrimination in violation of Cal. Govt. Code § 12940(m) based on failure to provide reasonable accommodation; 3) disability discrimination in violation of Cal. Govt. Code 12940(n) based on failure to engage in the interactive process; 4) retaliation in violation of Cal. Govt. Code § 12490(h); 5) failure to do everything reasonably necessary to prevent discrimination and retaliation in violation of Cal. Govt. Code § 12940(k); 6) violation of Cal. Govt. Code § 12945.2(a); 7) retaliation for taking/requesting leave in violation of Cal. Govt. Code § 12945.2(1); 8) wrongful termination in violation of public policy; and 9) intentional infliction of emotional distress ("IIED"). (Id.) Of these, only the IIED claim is brought against Zuniga. (Id. at 21.) On

May 31, 2019, Pier 1 removed the action to this Court, arguing that Plaintiff fraudulently joined Zuniga in order to defeat diversity jurisdiction. ("Notice of Removal" or "NOR," Dkt. No. 1.)

On July 1, 2019, Plaintiff filed the Motion, along with a memorandum of points and authorities ("Memo," Dkt. No. 11-1). On July 15, 2019, Defendant filed an opposition. ("Opp.," Dkt. No. 14.) On July 29, 2019, Plaintiff filed a reply. ("Reply," Dkt. No. 16-1.[1])

**B. Relevant Factual Allegations**

Plaintiff worked as a Material Handler for Pier 1. (Comp. ¶ 21.) On July 23, 2013, Plaintiff felt a pain in his back while lifting heavy boxes. (Id. ¶ 23.) In April 2016, Plaintiff had surgery on his back and went off work. (Id. ¶ 25.) Plaintiff alleges Defendants refused to make reasonable accommodations and instead forced him to take medical leave. (Id. ¶¶ 29–30.) Plaintiff was placed on a leave of absence in January 2017. (Id. ¶ 32.) Plaintiff applied for an administrative assistant position in February 2017, but Zuniga, a human resources representative with Pier 1, told Plaintiff he could not apply for the position because she was on a leave of absence. (Id. ¶ 33.) Plaintiff was terminated on April 26, 2017. (Id. ¶ 34.) She alleges Defendants terminated him because of his physical disabilities and in retaliation for taking or requesting leave and reasonable accommodations. (Id. ¶ 35.) Plaintiff alleges these actions "were extreme and outrageous acts, and were taken with the intention of causing Plaintiff extreme emotional distress, humiliation, embarrassment and mental anguish." (Id. ¶ 150.)

## II. LEGAL STANDARD

**A. Motion to Remand and Fraudulent Joinder**

Pursuant to 28 U.S.C. § 1441(a), a defendant has the right to remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal district courts have original jurisdiction over civil actions in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008).

---

[1] Plaintiff filed a reply as Dkt. No. 15. He then filed a notice of errata (Dkt. No. 16) accompanied by a corrected version of the Reply (Dkt. No. 16-1). Accordingly, citations to the Reply refer to Dkt. No. 16-1.

On July 30, 2019, Pier 1 filed an objection and request for the Court to decline to consider Plaintiff's reply because it was untimely filed. ("Objection," Dkt. No. 17.) On July 31, 2019, Plaintiff filed a response to the Objection (Dkt. No. 18) and declaration (Dkt. No. 19) explaining that her failure to timely file the Reply was due to a clerical error. Because the late filing of the Reply caused no prejudice to Pier 1 and was not done in bad faith, the Court will consider it.

Removal statutes are to be strictly construed, Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992), and the party seeking removal bears the burden of proving its propriety, Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir.1996). See Abrego v. Dow Chem. Co., 443 F.3d 676, 683-85 (9th Cir. 2006); see also Calif. ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004) ("[T]he burden of establishing federal jurisdiction falls to the party invoking the statute[.]"). "[A]ny doubt about the right of removal requires resolution in favor of remand." Moore–Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

Removal is proper despite the presence of a non-diverse defendant where that defendant is a fraudulently joined or "sham" defendant. Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998). "There are two ways to establish fraudulent joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" GranCare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018) (quoting Hunter v. Phillip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009)). The Ninth Circuit has emphasized that "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." Id. at 549. Rather than merely showing that the plaintiff has not alleged facts plausibly stating a claim for relief, a defendant must show that there is no "*possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants[.]" Id. at 548 (internal quotation marks and citations omitted). Thus, that a court would grant a motion to dismiss the claim is insufficient to establish fraudulent joinder. Id. at 550. "[T]he district court must [still] consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." Id. Defendants asserting fraudulent joinder bear a "heavy burden" because of the presumption against finding defendants were fraudulently joined. Id. at 548. See also see also Padilla v. AT & T Corp., 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (defendant seeking removal based on alleged fraudulent joinder "must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant" but must also show that "there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant"); Gloger v. Lynch, 2016 WL 4770015, at *3 (C.D. Cal. Sept. 12, 2016) (noting that "the burden of proving a fraudulent joinder is a heavy one" because "the removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court"); Hurd v. Am. Income Life Ins., 2013 WL 5575073, at *3 (C.D. Cal. Oct. 10, 2013) ("The defendant must demonstrate that *there is no possibility* that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant.") (internal quotation marks omitted).

## B. Attorneys' Fees

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v.

Franklin Capital Corp., 546 U.S. 132, 140-41 (2005).  An award of fees under § 1447(c) is left to the district court's discretion.  Id. at 136, 139.

## III.  DISCUSSION

Plaintiff alleges she and Zuniga are residents of San Bernardino.  (Compl. ¶¶ 7, 10.)  In the Notice of Removal, Pier 1 asserts that it is incorporated in Delaware and has its principal place of business in Texas, and is therefore a citizen of Delaware and Texas.  (NOR ¶¶ 15, 16.)  It alleges Plaintiff is a citizen of California and argues that, though "Zuniga is allegedly a California citizen, . . . her citizenship is irrelevant because she was fraudulently joined to defeat diversity jurisdiction."  (Id. ¶¶ 9, 18.)  Pier 1 further alleges that the amount in controversy exceeds $75,000.  (Id. ¶ 31.)  Thus, Pier 1 argues, the Court has jurisdiction based on diversity of citizenship.  (Id. ¶ 35.)  Plaintiff does not dispute Pier 1's allegations regarding any of the parties' citizenship or the amount in controversy.  (See Motion.)  Rather, she argues that Zuniga was not fraudulently joined.  (Id. at 5–14.)  Defendant contends Plaintiff cannot state an IIED claim against Zuniga because 1) the IIED claim is time-barred; 2) Zuniga cannot be personally liable for discrimination or retaliation; 3) Zuniga's alleged conduct falls within the managerial privilege; 4) Plaintiff does not and cannot allege Zuniga engaged in "extreme and outrageous" conduct; and 5) the claim is precluded by California's Workers' Compensation Act ("WCA").  (Opp. at 2–13.)

### A.  Timeliness

Pier 1 argues Plaintiff's IIED claim against Zuniga is time-barred because the sole act attributed to Zuniga, her statement that Plaintiff could not apply for an administrative assistant position, falls outside the two-year statutory period.  (Opp. at 2 (citing Compl. ¶ 33; Cal. Civ. Proc. Code § 335.1).)  Plaintiff responds that the IIED claim is also based on Defendants' – including Zuniga's – termination of Plaintiff in April 2017, which is within the two-year statutory period.  (Reply at 3.)  However, Pier 1 contends personnel actions, such as termination, do not by themselves give rise to an IIED claim.  (Opp. at 3 (citing Dagley v. Target Corporation, Inc., 2009 WL 910558, at *3 (C.D. Cal. Mar. 31, 2009); Janken, 46 Cal. App. 4th at 80; Gibson v. Am. Airlines, 1996 WL 329643, at *4 (N.D. Cal. June 6, 1996)).)

The Court considers below whether Plaintiff's allegation that Zuniga and Pier 1 fired her for discriminatory and retaliatory reasons is sufficient to state a claim for IIED.  However, any IIED claim stemming from Zuniga's February 2017 statement is time-barred.  Moreover, the Court agrees with Defendant that Plaintiff could not in good faith amend her Complaint to allege that Zuniga's statement was made at a later date.  (See Opp. at 3.)  Accordingly, the Court concludes there is no possibility Plaintiff could state an IIED claim against Zuniga based on the February 2017 statement.

//
//
//

### B. Personal Liability for Discrimination/Retaliation

Pier 1 contends that a supervisor defendant cannot be personally liable for discrimination claims, and thus cannot be held liable for an IIED claim based on alleged discriminatory acts. (NOR ¶ 22 (citing Reno v. Baird, 18 Cal. 4th 640, 643 (1998); Jones v. Lodge at Torrey Pines Partnership, 42 Cal. 4th 1158, 1173 (2008); Smith v. Int'l Brotherhood of Electrical Workers, 109 Cal. App. 4th 1637, 1658 (2003)).) Reno held that California's Fair Employment and Housing Act ("FEHA") "allows persons to sue and hold liable their employers, but not individuals" and that this conclusion also "applies to common law actions for wrongful discharge." 18 Cal. 4th at 643; see also id. at 664 ("It would be absurd to forbid a plaintiff to sue a supervisor under the FEHA, then allow essentially the same action under a different rubric."). Smith extended this reasoning to preclude emotional distress claims based on wrongful discharge against individual employees. 109 Cal. App. 4th at 1658.

However, in 2001, the California legislature amended FEHA to provide for liability by individual employees. Martinez v. Michaels, 2015 WL 4337059, at *8 (C.D. Cal. July 15, 2015); see also Winarto v. Toshiba Am. Elecs. Components, Inc., 274 F.3d 1276, 1288 (9th Cir. 2001) (holding that "an individual-supervisor may be held personally liable for retaliation under the FEHA."). Thus, the reasoning underlying Reno and Smith's conclusion that individual employees cannot be sued for common law wrongful discharge or emotional distress claims based on wrongful discharge is severely undermined. Moreover, a number of cases have specifically held that IIED claims based on discrimination can be brought against supervisors. See Dagley, 2009 WL 910558, at *3 (concluding that a personnel manager could be liable for an IIED claim based on wrongful discharge because "a claim of intentional infliction of emotional distress is possible '[w]here the behavior goes beyond the act of termination . . . .'") (quoting Gibson v. Am. Airlines, 1996 WL 329632, at *4 (N. D. Cal. June 6, 1996); Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1178-79 (finding plaintiff could state an IIED claim for alleged discriminatory termination by an individual supervisor because "California case law is replete with cases where conduct of the employer or one of its agents or employees is so outside the bounds of conduct tolerated by a decent society that it may give rise to a claim for intentional infliction of emotional distress.") (emphasis added) (citing Kiseskey v. Carpenters' Trust for Southern California, 144 Cal. App. 3d 222, 229 (1983) (collecting cases).

The parties dispute whether this is a case where the manager's alleged conduct goes beyond the act of termination. See Gibson, 1996 WL 329632, at *4. (See Opp. at 9–10; Reply at 8–9.) In the motion to dismiss context, the Court would reach a decision on this question. However, for purposes of this Motion, the Court is satisfied that there is at least a possibility that Plaintiff could plead an IIED claim against Zuniga for terminating him for discriminatory and retaliatory reasons.

### C. Managerial Privilege

Pier 1 argues that "because the IIED claim necessarily related to alleged personnel actions taken by Zuniga, liability is precluded by the managerial privilege." (NOR ¶ 23 (citing McCabe

v. General Goods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987); Gupta v. Int'l Business Machines Corp., et al., 2015 WL 9006917 (N.D. Cal. Dec. 16, 2015); Reno, 18 Cal. 4th at 647; Smith, 109 Cal. App. 4th at 1658; Janken v. GM Hughes Electronics, 46 Cal. App. 4th 55, 79-80 (1996)); see also Opp. at 6–7.) Pier 1 characterizes Smith and Janken as applying the managerial privilege doctrine to bar IIED claims. (Id.) Neither of these cases specifically mention the managerial privilege. See Smith, 109 Cal. App. 4th 1637; Janken, 46 Cal. App. 4th 55. Rather, both appear to relate to Pier 1's argument, which the Court has already addressed, that managers cannot be personally liable for discrimination under Reno.

None of the other cases cited by Pier 1 in support of its managerial privilege argument applies the privilege to an IIED claim. In fact, a number of courts have stated that it is "questionable" whether the privilege protects managers from IIED claims. See Onelum v. Best Buy Stores L.P., 948 F. Supp. 2d 1048, 1052 (C.D. Cal. 2013); Calero v. Unisys Corp., 271 F. Supp. 2d 1172, 1180 (N.D. Cal. 2003); see also Losik v. Current, Inc., 1992 U.S. Dist. LEXIS 20550, at *6 (N.D. Cal. Oct. 27, 1992) ("Plaintiffs' claims . . . for defamation, invasion of privacy, and intentional infliction of emotional distress . . . are outside the scope of the privilege at issue in *McCabe* . . . .") Pier 1 has thus failed to convince the Court that Plaintiff cannot, as a matter of law, sustain an IIED claim against Zuniga because her conduct is shielded by the managerial privilege.

### D. "Extreme and Outrageous" Conduct

Pier 1 also argues Plaintiff fails to plead an IIED claim because she has not alleged "extreme and outrageous" conduct. (NOR ¶ 25.) Zuniga's only alleged conduct within the limitations period was terminating Plaintiff. Pier 1 contends that such "personnel management decisions, even if taken for discriminatory or retaliatory reasons, do not rise to the level of 'extreme and outrageous' conduct necessary to support an IIED claim." (Id. ¶ 26 (citing Janken, 46 Cal. App. 4th at 65–65, 80).)

The Court agrees Plaintiff fails to allege any extreme or outrageous conduct by Zuniga. However, "a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant." Padilla, 697 F. Supp. 2d at 1158 (citing Burris v. AT & T Wireless, Inc., , 2006 WL 2038040, at *2 (N.D.Cal. July 19, 2006)). Rather, "[t]he defendant must also show that 'there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant.'" Id. (quoting Burris, 2006 WL 2038040, at *1). Because Plaintiff could amend his Complaint to include allegations of outrageous conduct by Zuniga, Pier 1 has not shown that Plaintiff could not possibly prevail on an IIED claim against Zuniga. See id.; GranCare, 889 F.3d at 548.

### E. Workers' Compensation Act

Finally, Pier 1 argues "California's Workers' Compensation Act precludes a civil action for IIED for purported injuries arising during employment." (NOR ¶ 27 (citing Cole v. Fair

Oaks Fire Protection Dist., 43 Cal. 3d 148, 161 (1987)).) Plaintiff counters that the WCA does not preclude claims arising out of an "'employer's illegal discriminatory practices'" or conduct, like discrimination, that is "'not a normal incident of employment[.]'" (Memo at 4 (quoting Accardi v. Superior Court, 17 Cal. App. 4th 341, 352-53 (1993); Watson v. Department of Rehabilitation, 212 Cal. App. 3d 1271, 1287 (1989)).) Defendant does not dispute this contention in the Opposition. (See Opp. at 11.) Accordingly, the Court finds that the WCA does not preclude Plaintiff's IIED claim.

In summary, Pier 1 fails to show that Plaintiff's IIED claim is precluded as a matter of law. While Plaintiff does not state an IIED claim against Zuniga in the Complaint, the question of whether Plaintiff has stated a claim for relief is not before the Court. Rather, the Court considers whether Plaintiff could possibly state a claim against Zuniga.[2] See GranCare, LLC v. Thrower, 889 F.3d at 550. Because Defendant has not shown Plaintiff could not possibly state an IIED claim against Zuniga, Zuniga is not a sham defendant. Diversity jurisdiction is therefore lacking. There being no other alleged basis for federal subject matter jurisdiction, the Court remands the case to state court.

## F. Attorneys' Fees

Plaintiff argues he is entitled to attorneys' fees and costs incurred in litigating this Motion. (Memo at 14–15.) Because the Court does not find Pier 1's removal of the action unreasonable, it declines to grant attorneys' fees. See Martin, 546 U.S. at 140-41.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion and REMANDS the case to state court for all further proceedings. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

---

[2] Pier 1 asserts that "[r]eview of the complaint in fraudulent joinder cases is constrained to the facts actually alleged therein, not on what could hypothetically be pled by the plaintiff later." (Opp. at 13 (citing Kruso v. Int'l Tel. & Tel. Corp., 872 F.2d 1416, 1426 n. 12 (9th Cir. 1989); Toth v. Guardian Industries Corp., 2012 WL 468244 at *5 (E.D. Cal. Feb. 13, 2012); Pasco v. Red Robin Gourmet Burgers, Inc., 2011 WL 5828153, *3 (E.D. Cal. Nov. 18, 2011); Smith v. Picayune, 795 F.2d 482, 485 (5th Cir. 1986)).) However, recent Ninth Circuit precedent contradicts this assertion. See GranCare, LLC v. Thrower, 889 F.3d at 550 ("If a defendant cannot withstand a Rule 12(b)(6) motion, the fraudulent inquiry does not end there. For example, the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend.").